**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPHEN K. McANALLY, | No. CIV S-04-1853-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| JO ANNE B. BARNHART,<br>Commissioner of Social Security, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 12) and defendant's cross-motion for summary judgment (Doc. 13).

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

Plaintiff applied for disability insurance ("DI") and supplemental security income ("SSI") benefits on May 4, 2001, based on disability. In his applications, plaintiff claims that his impairment began on January 30, 1999. Plaintiff is a United States citizen born June 26, 1952, with a high school education completed in 1970.

## A. Summary of the Evidence

In the disability adult report submitted with his application for benefits, plaintiff stated his disability consists of a combination of "depression, anxiety, 30 yrs. drug addict, clean for 3 1/2 years, low back pain," as well as an inability to concentrate and fatigue. He also stated that he is taking medication for depression and anxiety which makes him extremely groggy. Plaintiff added the following:

> I started abusing drugs when I was 12 years old. Started sniffing lighter fluid, glue, and gas fumes. Started on marijuana at age 13. By age 14 was taking LSD and bennies. Took LSD for over 360 trips. Also animal tranquilizers were smoked. By age 18 was shooting up methamphetamines, taking seconol, nembutal, and occasionally heroine. Continued using methamphetamine until age 45. Since then, I have been clean. I have severe difficulty concentrating, remembering, making decisions. Suffer from extreme burn-out. I cannot hold down full time job. Got fired from many jobs for being slow and not responding to orders correctly.

The record also contains the medical records from Placer County Community Clinic, where plaintiff saw his treating physician, Daniel Clark, M.D. These records consist of progress notes covering a period from March 25, 1999, through December 20, 2001, and contain entries made by both Dr. Clark and the nurse practitioner, Carol Ralli, F.N.P.C. The Placer County Community Clinic records also include radiological reports based on x-rays taken on October 31, 2001, and November 5, 2001.

/ / /

/ / /

/ / /

The progress reports show the following:

| Date | Report |
|---|---|
| 1-14-2000 | Plaintiff reports anxiety controlled by medication (Buspar). |
| 3-8-2000 | Plaintiff presented for depression; not suicidal; having trouble sleeping. |
| 6-28-2000 | Plaintiff says he feels like depression is not being adequately treated; not suicidal; anxiety partially controlled by medication. |
| 10-13-2000 | Plaintiff says he feels depressed; not suicidal; feels less anxious. |
| 11-15-2000 | Plaintiff reports drug abuse clean since 1998; anxiety and depression diagnosed by Dr. Clark; plaintiff has never seen a mental health professional; plaintiff has decreased memory secondary to 30 years of drug abuse; plaintiff does not have hallucinations, but objects appear to move around; chronic low back pain. |
| 2-8-2001 | Plaintiff's thought processes normal; plaintiff is obese; good range of motion; normal gait; normal liver function tests; intermittent low back pain; treatment plan is to continue medications. |
| 4-20-2001 | Plaintiff stated he has been depressed for years; renewed prescriptions for Klonopin and anti-depressant. |
| 5-2-2001 | Drug abuse clean for three years; Hepatitis C with normal liver function test one year ago; anxiety and depression; gastroesophageal reflux disease; mild encephalopathy secondary to intravenous drug abuse. |
| 6-12-2001 | Plaintiff is obese at 253 lbs.; no spinal point tenderness; minimal paraspinous tenderness; pronounced SI joint tenderness mostly on the right; decreased range of motion secondary to pain; straight-leg raise negative bilaterally; prescribed Tylenol and moist heat. |
| 11-2-2001 | Plaintiff is being treated for chronic back pain; pain goes down left buttock into the left leg; pain medication prescribed. |
| 11-21-2001 | Plaintiff can cut and split wood all day without back pain, but will occasionally have excruciating pain when bending and twisting; dosage of Klonopin increased to three times a day; upper respiratory infection observed; normal x-ray and normal exam. |

The x-ray taken on October 31, 2001, revealed that plaintiff has good alignment throughout the lower back region with minor thinning of intervertebral disks, most marked in the upper lumbar region. The x-ray also revealed possible complete pars defect. The radiologist opined that instability may need to be ruled out. Overall, the impression was of minor

3

degenerative findings in the spine. The November 5, 2001, x-ray showed a loss of disk height and hypertrophic changes at multiple levels, but no abnormal motion and instability. Overall alignment was normal and no vertebral compression fractures were observed.

Also contained in the certified administrative record are the reports of two agency consultative examining physicians – Dr. Pavitar Cheema, M.D., and Dr. Deborah Schmidt, M.D. Dr. Cheema conducted a comprehensive psychiatric evaluation of plaintiff on August 1, 2001. In his report, Dr. Cheema noted that plaintiff's thinking was clear. Dr. Cheema ruled out major depressive disorder. Dr. Cheema concluded:

> From a psychiatric point of view, secondary to ongoing depression, the patient can have difficulty interacting with the public, co-workers, and supervisors. He can have mild to moderate problem with maintaining attention, concentration, persistence, and pace in a normal 8-hour-per-day job and, as well, with remembering, understanding, and carrying out complex job instructions. The patient can have relapse of symptoms in a stressful environment. The patient should be able to understand, remember, and carry out simple job instructions. He as able to take care of routine chores at home for himself. The patient's social interactions are fair. The patient should be able to carry out simple, repetitive tasks, provided his physical health allows for that.

Dr. Cheema conducted a second evaluation on August 5, 2003, but this time diagnosed major depressive disorder and moderate panic disorder.

Dr. Schmidt conducted a psychological evaluation on January 24, 2002. In her report, Dr. Schmidt stated:

> With regard to Mr. McAnally's diagnosis, his test results . . . suggest that he is functioning intellectually in the borderline range overall, given he obtained a Full Scale IQ of 74. His Verbal IQ, however, is in the low average range, while his Performance IQ is in the mentally retarded range. Mr. McAnally indicated that he abused methamphetamine intravenously for many years and that he also abused a variety of other drugs, as well as alcohol. It is difficult to determine to what extent he may have experienced a cognitive decline due to his prolonged substance abuse. His scores . . . suggest that he is suffering from significant auditory and visual short-term memory deficits. His scores [on other tests], however, reveal no evidence of organicity. Mr. McAnally also indicated that he has experienced depressive symptoms on and off his entire life. He reported that he currently experiences sleep disturbance, has lost twenty pounds, has difficulty remembering things, and has panic attacks.

Dr. Schmidt also opined:

> According to Mr. McAnally's test results, he possesses the intellectual ability to carry out and understand simple to mildly complex instructions and tasks, depending upon what the task is.  For example, his strengths lie in his verbal abilities, while his weaknesses lie in abstract reasoning, social judgement, and visual-motor speed and coordination.  He was able to follow test directions well, put effort into the testing, and was able to concentrate adequately on test items.  His scores . . . however, suggest that he is suffering from significant short-term memory deficits, which likely would interfere with his ability to perform various tasks in a work setting.  He was socially appropriate with me and displayed no evidence he would be socially inappropriate in a work setting with peers or supervisors.  He also was able to deal with frustrations well and displayed no evidence he would become emotionally inappropriate when presented with various stressors and/or change.

**B.** **Procedural History**

Plaintiff's claims were initially denied.  Following denial of his request for reconsideration, plaintiff requested an administrative hearing, which was held on November 14, 2002, before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres.

In his January 31, 2003, decision, the ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on January 30, 1999, the date the claimant stated he became unable to work, and continued to meet them through the end of September 2002;

2. The claimant has not engaged in substantial activity since January 30, 1999;

3. The medical evidence establishes that the claimant has severe back pain, but that he does not have an impairment or combination of impairments listed in, or medially equal to one listed in Appendix I, Subpart P, Regulation No. 4; the claimant's gastroesophageal reflux disease, encephalopathy, hepatitis C, and anxiety/depression are not severe impairments;

4. The claimant's testimony is not substantially credible for the reasons stated in the body of this decision;

5. The claimant has the residual functional capacity to perform the non-exertional requirements of work except for understanding, remembering, and carrying out detailed or complex job instructions, handling high stress work, and frequently socially interacting with the public; there are no exertional limitations;

6. The claimant is unable to perform his past relevant work as a doormaker;

7. The claimant is 50 years old, which is defined as a closely approaching advanced age individual; at the time the claimant alleged he was disabled on January 30, 1999, he was a younger individual;

8. The claimant possesses a high school education;

9. The claimant does not have any acquired work skills which are transferable to the skilled or semiskilled work functions of other work;

10. If the claimant's non-exertional limitations did not significantly compromise his ability to perform work at all exertional levels, section 204.00, Appendix 2, Subpart P, Regulation No. 4, indicates that a finding of not disabled would be appropriate; if his capacity to work at all levels were significantly compromised, the remaining work which he would functionally be capable of performing would be considered in combination with his age, education, and work experience to determine whether a work adjustment could be made;

11. Considering the range of work at all exertional levels which the claimant is still functionally capable of performing, in combination with his age, education, and work experience, and using the above-cited section 204.00 as a framework for decision-making, the claimant is not disabled; and

12. The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision.

The Appeals Council issued an order on May 30, 2003, remanding the case to the ALJ for further consideration. As to new medical evidence submitted for the first time on appeal, the Appeals Council said:

> The Council finds that these records do comment on the claimant's credibility, albeit not in a favorable light, as they show the claimant was chopping and hand sawing wood, carrying wood, lifting a heavy rock, and pulling weeds, activities inconsistent with the claimant's allegation that he is "disabled." However, a portion of these treatment notes are new and material, as they show evidence of chronic obstructive pulmonary disease (COPD), an impairment that was not documented in the record before the Administrative Law Judge. Such evidence raises the possibility of a greater level of severity than found by the Administrative Law Judge relevant to the period covered by the hearing decision. Accordingly, such evidence is new and material and warrants further consideration.

/ / /

/ / /

/ / /

As to the weight the ALJ gave to the treating physician's opinion, the Appeals Council said:

> . . . [T]he decision did not state what weight should be accorded the opinion offered by the claimant's treating physician, Daniel Clark, M.D., who assessed the claimant was "disabled" due to a "combination of depression, encephalopathy, and low back pain." Accordingly, further evaluation is warranted in accordance with Social Security Ruling 96-2p.

As to claimant's mental impairments, the Appeals Council stated:

> In addition, the decision did not include documentation of the application of the psychiatric review technique form. As set forth in [the regulations], the decision must incorporate the pertinent findings and conclusions based on the technique and must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusions about the severity of the claimant's mental impairment.

> The Appeals Council specifically directed the ALJ to do the following on remand:

> 1. Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with regulatory standards concerning consultative examinations and existing medical evidence; the additional evidence may include, if warranted and available, a consultative orthopedic and/or mental status examination with psychological testing and medical source statements about what the claimant can still do despite the impairments;

> 2. Give consideration to the treating source opinion, from Dr. Clark, as discussed above, pursuant to the provisions of [the regulations] and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence; as appropriate, the Administrative Law Judge may request Dr. Clark to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairment; the Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from Dr. Clark;

> 3. Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (citations omitted) and Social Security Ruling 96-7p;

> 4. Further evaluate the claimant's mental impairment in accordance with the special technique described in [the regulations] and document application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in [the regulations];

///

      5.      Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations; and

      6.      Obtain evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines of Social Security Ruling 82-41; the hypothetical questions should reflect the specific capacity/limitations established by the record as a whole; the Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy; further, before relying on the vocational expert evidence, the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

The ALJ conducted a supplemental hearing on November 7, 2003, and issued a new decision on November 21, 2003. In the new decision, the ALJ made all of the same findings as in his previous decision, and added the following finding:

> The vocational expert credibly testified that the claimant is capable of performing the following occupations: (1) Small Part Assembler – a light occupation (over 68,000 jobs in California and over 2,500 jobs locally); (2) Packing Line Assembler – a light occupation (over 21,000 jobs in California and over 450 jobs locally); (3) Bottle Packer – a light occupation (over 18,000 jobs in California and over 600 jobs locally); (4) Lamp Shade Assembler – a sedentary occupation (over 4,500 jobs in California and over 300 jobs locally); (5) Production Checking Cable Worker – a sedentary occupation (over 3,400 jobs in California and over 80 jobs locally); and (6) Nut Grader – a sedentary occupation (over 1,500 jobs in California and over 57 jobs locally);

The ALJ concluded that plaintiff was not disabled and, therefore, not entitled to DI or SSI benefits. After the Appeals Council declined review on May 28, 2004, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In his motion for summary judgment, plaintiff appears to raise the following arguments: (1) the ALJ improperly rejected the opinion of plaintiff's treating physician; (2) the ALJ improperly determined that plaintiff was not credible with respect to pain; and (3) the ALJ

/ / /

/ / /

improperly relied on the testimony of the vocational expert.[1]

### A. Weight Given to Medical Opinions

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4

---

[1] It is somewhat difficult to discern the exact nature of each of plaintiff's arguments. In plaintiff's brief, the description of a particular argument contained in a heading does not necessarily correspond with the actual argument raised in the text of that section. For example, at page 11 of plaintiff's brief, the heading reads:

> B. MR. McANALLY'S WELL DOCUMENTED PHYSICAL AND MENTAL IMPAIRMENTS MEET OR EQUAL SEVERAL DIFFERENT LISTED IMPAIRMENT THUS QUALIFYING STEPHEN FOR DISABILITY BENEFITS ON THE BASIS OF THE MEDICALLY DOCUMENTED EXISTENCE OR A COMBINATION OF SEVERE IMPAIRMENTS WHEN BOTH SETS OF CONDITIONS ARE TAKEN INTO CONSIDERATION.

One would expect from this heading that plaintiff is arguing that the ALJ failed to correctly apply the Listing set forth in the regulations. This is not, however, what plaintiff actually argues in the text of this section. After outlining various aspects of the record, plaintiff's assignment of ALJ error is:

> . . . As noted in Holohan v. Massanari, 246 F.3d 1195 (9th Cir. Cal. 2001) [sic] it is not appropriate for an ALJ to reject or discount the opinions of treating psychiatric sources in favor of the cursory assessment of a claimant's residual psychiatric functioning made by consulting professionals with only limited experience of the claimant. (additional citations omitted).

Thus, it appears that plaintiff is actually arguing under this heading that the ALJ failed to give appropriate weight to the various medical opinions.

The court has made every effort to glean each possible argument actually raised in the text of plaintiff's brief. To the extent an issue suggested by a heading in plaintiff's brief is not discussed herein, it is because no actual argument was raised in the text of the brief.

(9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

        1.        Treating Physician Opinion (Dr. Clark)

Plaintiff asserts that Dr. Clark's treatment notes show plaintiff as ". . . suffering from depression which has been treated with a variety of medications" and that these medications have been ". . . consistently prescribed at the Placer County Community medical clinic service." Plaintiff states Dr. Clark's record also show that he ". . . consistently identifies

11

back pain and breathing problems as his presenting complaints" and that plaintiff has received medication for these problems.  As to Dr. Clark, the ALJ stated:

> . . . [F]urther consideration must be given to the claimant's treating physician, Dr. Daniel Clark, M.D., who opined in February 2001 that he was "disabled due to combination of depression, encephalopathy and low back pain."  However, this assessment is lacking in credibility because: (1) it is at odds with the assessments from the two consultative physicians who found no evidence of any medical impairment related to functional limitations; (2) it is inconsistent with the claimant's very limited medical treatment, sporadic use of pain medications and wide ranging daily activities; (3) it appears to have been based upon the claimant's self-serving subjective statements; (4) it is at odds with the doctor's own findings that the liver function testing was negative, encephalopathy was only mild, back pain was only intermittent, gait was full, back was non-tender, respiratory symptoms were not present, back x-rays were normal, and range of motion was good; and (5) his medical opinion pertaining to depression is not credited as he is not a psychologist or psychiatrist.  As such, it is concluded that Dr. Clark's conclusions are not credible.

Other than the conclusory statement that ". . . it is not appropriate for an ALJ to reject or discount the opinions of treating psychiatric sources in favor of the cursory assessment of a claimant's residual psychiatric functioning made by consulting professionals with only limited experience of the claimant," plaintiff offers no argument as to the ALJ's analysis of Dr. Clark's opinion.  Clearly, the ALJ has met his burden of setting out specific and legitimate reasons for rejecting Dr. Clark's opinion and plaintiff cites no authority to the contrary.

The question is whether the ALJ's decision to reject Dr. Clark's opinion is supported by substantial evidence.  After reviewing the entire record, and Dr. Clark's progress notes in particular, the court concludes that it is.  In particular, the court is persuaded by Dr. Clark's notes from June 28, 2000, which shows that plaintiff's anxiety is partially controlled by medication, and October 13, 2000, which states that plaintiff felt less anxious.  The court also notes Dr. Clark's treatment notes from February 8, 2001, in which Dr. Clark found: thought processes normal; good range of motion; normal gait; and normal liver function tests.  Moreover, Dr. Clark's notes from November 15, 2000, indicate that plaintiff never sought treatment from a mental health professional, thereby calling into question the severity of his mental problems.

Finally, Dr. Clark's records show a consistent, unchanging course of treatment, suggesting that plaintiff's problems were under control with medication. Most compelling are Dr. Clark's treatment notes from November 21, 2001, which indicate that plaintiff could cut and split wood all day without back pain.

        2.      <u>Consultative Examining Physician Opinions (Dr. Cheema and Dr. Schmidt)</u>

It appears that plaintiff argues that the ALJ also erred in rejecting Dr. Clark's opinion because it was corroborated by two agency consultative examining physicians – Dr. Cheema and Dr. Schmidt. While the ALJ referred to some of the clinical findings made by Dr. Cheema and Dr. Schmidt, he rejected some of their ultimate opinions. As to Dr. Cheema, the ALJ stated:

> Since the date of the last decision, the claimant again underwent consultative psychiatric evaluation in August 2003, by Dr. Cheema who concluded this time that his depression had markedly impaired his ability to handle stress, respond to changes in a routine work setting, and understand and carry out complex or detailed job instructions. However, the undersigned finds that this assessment is lacking in credibility as: (1) it is at odds with the doctor's prior assessment and that of Dr. Schmidt; (2) it appears to have been based primarily upon the claimant's self-serving subjective statements; (3) it is inconsistent with the doctor's mental status exam which found that the claimant's speech was logical, affect was appropriate, suicidal thoughts were not present, thought content was normal, memory was normal, abstract thinking was logical and judgment was reasonable; and (4) it is at odds with the doctor's other findings that the claimant could manage his own funds . . . and was taking care of his daily living activities. Hence, Dr. Cheema's August 2003 assessment is lacking in credibility.

As to Dr. Schmidt, the ALJ stated:

> Although Dr. Schmidt also found evidence of short-term memory deficits pursuant to DMS-III testing, because there is no other mental health evidence in the record corroborating the presence of short-term memory deficits, Bender-Gestalt testing ruled out any evidence of organicity and his symptoms improved with psychiatric medications, this finding is not accorded any weight.

/ / /

/ / /

In his brief, plaintiff offers no argument as to Dr. Cheema or Dr. Schmidt beyond the conclusory statement concerning the ALJ's analysis of Dr. Clark's opinion. In any event, the court has reviewed the medical records and finds that the ALJ's analysis was proper and supported by substantial evidence.

### B.   Plaintiff's Credibility [2]

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.

///

///

---

[2]   Plaintiff's brief organizes this issue as follows:

> A. THE HEARING DECISION IS NOT CONSISTENT WITH THE PREPONDERANCE OF MEDICAL AND TESTIMONIAL EVIDENCE PRESENTED AT THE HEARING AND INCLUDED IN THE ADMINISTRATIVE RECORD.
>
> 1. The hearing decision incorrectly discounts the claimant's credibility with respect to his experience of exertional and non-exertional pain.

Given that the brief contains no actual argument as to the general nature of the medical evidence other than the conclusory statements "The medically documented mental impairments include severe depression and anxiety disorders," and "The record also indicates that Mr. McAnally may be impacted by some organic brain disorder or mild developmental disabilities," it is reasonable to conclude that plaintiff is arguing that the hearing decision is inconsistent with the evidence because the ALJ improperly discounted plaintiff's pain testimony.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

As to plaintiff's credibility, the ALJ stated:

> The claimant testified at the supplemental hearing that he has chronic, severe back pain and breathing problems which precludes him from performing prolonged sitting, standing, walking, and lifting more than 20 to 30 pounds. He stated that he has been prescribed multiple medications and visited his treating physician about 10 to 15 times in 2003. He further stated that his ability to work is limited by his depression with resulting concentration loss, anxiety, and social avoidance. He submitted that he is limited in his ability to perform household chores.
>
> The Administrative Law Judge has carefully considered the claimant's depression in terms of the criteria of Social Security Ruling 85-15 and has concluded that his complaints are out of proportion to the overall weight of the objective medical evidence of record and other factors of a non-medical nature and therefore, renders his testimony not substantially credible. In this regard, the record shows that while the claimant has a history of mental health treatment for depression and anxiety, these impairments have been fairly well-controlled with prescription medications, have not been attended with significant objective clinical findings, have not required psychiatric hospitalization, and have not resulted in marked limitations in his daily living activities. In fact, on August 1, 2001, consultative psychiatrist, Pavitar Cheema, M.D., merely diagnosed dysthymia which only mildly to moderately limited his ability to maintain attention, concentration, persistent, and pace in a normal work environment, did not preclude him from understanding, remembering, and carrying out simple job instructions, did not preclude him from performing a fair amount of social interactions, and would not preclude him from functioning in a low stress environment. Evidence of improvement in the

claimant's mental health can also be found in progress notes which indicate that his anxiety was controlled on medications as of January 4, 2000; and, his anxiety was noted to be partially controlled on medications as of June 28, 2000; he was described as alert, oriented, pleasant, less depressed and anxious, and not suicidal on October 13, 2000.  Another consultative mental health evaluator, Deborah Schmidt, Ph.D., a psychologist, concurred in January 2002 that the claimant is capable of understanding, remembering, and carrying our simple job instructions, socially interacting with others, and even handling stressful work environments.  It was noted that the claimant's GAF was a robust 55 to 60. . .  Similarly, a non-examining state agency psychiatrist concluded in September 2001 that the claimant's depression would only moderately limit his ability to socially interact with others, maintain attention and concentration in the work place, and perform daily living activities.  Other evidence which is probative on the issue of credibility consists of the claimant's wide-ranging activities of daily living which include socializing with a friend, reading his Bible, shopping, cooking, and paying his own bills.

Plaintiff argues that the foregoing analysis does not meet the ALJ's burden of setting forth specific and cogent reasons for rejecting plaintiff's testimony as not credible.  Plaintiff also contends that the ALJ's credibility finding is not supported by substantial evidence because, contrary to the ALJ's conclusion, the medical evidence does in fact corroborate plaintiff's testimony.

This court must give deference to the ALJ's discretion in making credibility findings as long as the ALJ used the proper process and provided proper reasons.  See Saelee, 94 F.3d at 522.  Clearly, the ALJ used the proper process by setting forth a summary of the testimony and the evidence tending to undermine it.  Additionally, each of the reasons the ALJ set out for rejecting plaintiff's pain testimony was legally proper.  See Smolen, 80 F.3d at 1284.

As to plaintiff's argument that there is, in fact, evidence corroborating his complaints, plaintiff points to the opinions of Dr. Cheema and Dr. Schmidt, who both diagnosed depression.  For the reasons discussed above with respect to the weight the ALJ gave the various medical opinions, the opinions of Dr. Cheema and Dr. Schmidt were properly afforded little evidentiary weight.  Therefore, their opinions do not constitute corroborating evidence.

///

As to plaintiff's subjective complaints of debilitating side effects of medications, the court finds that such complaints are not supported by the medical evidence.  In fact, a review of Dr. Clark's treatment notes show that plaintiff continued with the same medications and that his dosage of Klonopin was actually increased.  This course of treatment is inconsistent with debilitating side effects which, if present, would call for changing the type of drug used instead of increasing its dosage.  Moreover, on November 21, 2001, Dr. Clark noted that plaintiff can cut and split wood all day.  Again, this is inconsistent with plaintiff's subjective complaints of debilitating grogginess as a side effect of medication.

### C. Testimony of the Vocational Expert

Plaintiff argues that ". . . the hypothetical propounded by the ALJ to the vocational expert failed to include any specific reference to the medically documented conditions that were repeatedly identified in the case record and in Mr. McAnally's testimony."  In particular, plaintiff states that the ALJ's hypothetical described plaintiff's mental health problems as depression, panic disorder with agoraphobia, and polysubstance abuse in remission.  The ALJ's hypothetical also acknowledged plaintiff's difficulty interacting with the public, co-workers and supervisors, and plaintiff's ability to follow only simple instructions.  Plaintiff assigns error because the hypothetical question: (1) did not describe the side effects of plaintiff's medications; and (2) implicitly presumed a functional capacity for medium work with no restrictions.  Plaintiff also argues that the ALJ's findings concerning his functional capacity are inconsistent with testimony the vocational expert gave after being questioned by his attorney.

#### 1. Hypothetical Questions

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the

ALJ may pose to the expert a range of hypothetical questions, based on alternate interpretations of the evidence, the hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by substantial evidence in the record as a whole. Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988).

As to the vocational expert, the ALJ stated in his decision:

> . . . [T]he claimant was a younger age individual prior to June 26, 2002, has been a closely approaching advanced age individual since this date, possesses a high school education, and has past relevant work experience of a semiskilled to skilled nature. The vocational expert was asked whether an individual with these vocational factors and capable of performing work at all exertional levels, eroded only non-exertionally by an inability to perform complex or detailed job tasks, work in high stress environments, and frequently socially interact with the public, is considered to be fully capable of performing other jobs existing in significant numbers in the national economy or region in which he resides.

The question is whether this accurately describes plaintiff based on the objective medical evidence. Plaintiff argues that it does not because the hypothetical did not describe the side effects of plaintiff's medications, and presumed a functional capacity with no restrictions. Plaintiff's arguments are not persuasive. First, the record does not support a conclusion that medication resulted in impairing side effects. Second, plaintiff is incorrect that the ALJ's hypothetical presumed no restrictions. To the contrary, as shown by the portion of the hearing decision quoted above, the ALJ posited numerous limitations.

####    2.    Reliance on Testimony

Plaintiff states that, upon questioning by his attorney at the administrative hearing, the vocational expert testified that even sedentary employment would be eroded if the impact of plaintiff's medications was considered. Plaintiff argues that, given this testimony, the ALJ erred in relying on the vocational expert's earlier testimony to the effect that plaintiff could perform a significant number of jobs despite his non-exertional limitations. The court disagrees. As discussed above, the record does not support a finding that plaintiff's medications produced impairing side effects. Therefore, the ALJ did not err in rejecting the vocational expert's

testimony elicited by plaintiff's counsel.

### IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

    1.    Plaintiff's motion for summary judgment is denied;

    2.    Defendant's cross-motion for summary judgment is granted; and

    3.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 16, 2006.

                                                          **CRAIG M. KELLISON**
                                                          UNITED STATES MAGISTRATE JUDGE